UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| WESTLB AG, | Case No. 13-CV-3611 (PJS) |
| Appellant, | |
| v. | ORDER |
| DOUGLAS A. KELLEY, Chapter 11 Trustee; UNSECURED CREDITORS COMMITTEE, | |
| Appellees. | |
| OPPORTUNITY FINANCE, LLC; OPPORTUNITY FINANCE SECURITIZATION, LLC; OPPORTUNITY FINANCE SECURITIZATION II, LLC; OPPORTUNITY FINANCE SECURITIZATION III, LLC; INTERNATIONAL INVESTMENT OPPORTUNITIES, LLC; SABES FAMILY FOUNDATION; SABES MINNESOTA LIMITED PARTNERSHIP; ROBERT W. SABES; JANET F. SABES; JON R. SABES; STEVEN SABES, | Case No. 13-CV-3614 (PJS) |
| Appellants, | |
| v. | |
| DOUGLAS A. KELLEY, Chapter 11 Trustee; UNSECURED CREDITORS COMMITTEE, | |
| Appellees. | |

| | |
|---|---|
| ELISTONE FUND, | Case No. 13-CV-3615 (PJS) |
| Appellant, | |
| v. | |
| DOUGLAS A. KELLEY, Chapter 11 Trustee; UNSECURED CREDITORS COMMITTEE, | |
| Appellees. | |
| DZ BANK AG DEUTSCHE ZENTRAL-GENOSSENSCHAFTSBANK, FRANKFURT AM MAIN, | Case No. 13-CV-3616 (PJS) |
| Appellant, | |
| v. | |
| DOUGLAS A. KELLEY, Chapter 11 Trustee; UNSECURED CREDITORS COMMITTEE, | |
| Appellees. | |
| EPSILON GLOBAL ACTIVE VALUE FUND I-B LTD.; EPSILON GLOBAL ACTIVE VALUE FUND II, L.P.; EPSILON GLOBAL ACTIVE VALUE FUND II-B, L.P.; EPSILON GLOBAL ACTIVE VALUE FUND II-B, LTD.; EPSILON GLOBAL ACTIVE VALUE FUND III LTD.; EPSILON GLOBAL ACTIVE VALUE FUND LTD.; EPSILON GLOBAL ACTIVE VALUE FUND, L.P.; EPSILON GLOBAL ASSET MANAGEMENT LTD.; EPSILON GLOBAL MASTER FUND II, L.P., a/k/a Epsilon Global Master Fund II, L.P., Sub. 1; EPSILON GLOBAL MASTER FUND, L.P.; EPSILON STRUCTURED STRATEGIES MASTER FUND, L.P., f/k/a Epsilon Global Master Fund III Structured Strategies, L.P.; EPSILON INVESTMENT MANAGEMENT, | Case No. 13-CV-3618 (PJS) |

LLC; STAFFORD TOWN LTD.;
WESTFORD ASSET MANAGEMENT,
LLC; WESTFORD GLOBAL ASSET
MANAGEMENT LTD.; WESTFORD
SPECIAL SITUATIONS FUND LTD.;
WESTFORD SPECIAL SITUATIONS
FUND, L.P.; WESTFORD SPECIAL
SITUATIONS MASTER FUND, L.P.;
STEVE G. STEVANOVICH,

                Appellants,

v.

DOUGLAS A. KELLEY, Chapter 11
Trustee; UNSECURED CREDITORS
COMMITTEE,

                Appellees.

    Patrick J. McLaughlin, Shari L.J. Aberle, Elizabeth A. Hulsebos, and Erin Knapp Darda, DORSEY & WHITNEY LLP, for appellant in Case No. 13-CV-3611.

    John R. McDonald, Kari S. Berman, BRIGGS AND MORGAN, P.A.; Joseph G. Petrosinelli, Jonathan M. Landy, Jefferey D. Bailey, Christopher J. Mandernach, WILLIAMS & CONNOLLY LLP, for appellants in Case No. 13-CV-3614.

    Elise Scherr Frejka, Jeffrey S. Trachtman, Joel M. Taylor, KRAMER LEVIN NAFTALIS & FRANKEL LLP; Justin H. Perl, Amy J. Swedberg, John R.K. Darda, MASLON EDELMAN BORMAN & BRAND LLP, for appellant in Case No. 13-CV-3615.

    Michael A. Rosow, Thomas H. Boyd, WINTHROP & WEINSTINE, P.A.; H. Peter Haveles, Jr., KAYE SCHOLER LLP, for appellant in Case No. 13-CV-3616.

    Robert T. Kugler, Bryant D. Tchida, STINSON LEONARD STREET LLP; Tobias S. Keller, KELLER & BENVENUTTI LLP, for appellants in Case No. 13-CV-3618.

    Mark D. Larsen, Daryle L. Uphoff, James A. Lodoen, Terrence J. Fleming, George H. Singer, Kirstin D. Kanski, Adam C. Ballinger, LINDQUIST & VENNUM LLP, for appellee Douglas A. Kelley.

Five groups of creditors appeal from the November 22, 2013 order of Chief United States Bankruptcy Judge Gregory F. Kishel granting the trustee's motion to substantively consolidate nine bankruptcy estates.[1] The bankruptcy trustee — an appellee in each appeal — moves for certification under 28 U.S.C. § 158(d)(2) so that the appeals can proceed directly to the United States Court of Appeals for the Eighth Circuit. In two of the cases (Case Nos. 13-CV-3611 and 13-CV-3615), the appellants join the trustee in requesting certification. For the reasons stated below, the Court denies the trustee's motions.

## I. BACKGROUND

These appeals arise out of the jointly administered bankruptcy proceeding of Petters Company, Inc. ("PCI") and eight "special-purpose entities" ("SPEs") wholly owned and controlled by PCI or Thomas J. Petters.[2] These entities sought bankruptcy protection in October 2008 shortly after an insider reported to the FBI that Petters was running a multi-billion-dollar Ponzi scheme through PCI. *United States v. Petters*, 663 F.3d 375, 379 (8th Cir. 2011).

---

[1] This Court has jurisdiction over the appeals under 28 U.S.C. § 158(a). That section grants jurisdiction over appeals from "final judgments, orders, and decrees," as well as from certain interlocutory orders — but those interlocutory orders can be appealed only with the Court's permission. With the exception of Elistone Fund, none of the appellants addresses whether Judge Kishel's order is final for purposes of § 158(a). It appears to the Court that an order granting a motion to consolidate is indeed final for purposes of § 158(a) and that therefore the appellants do not need the Court's permission to appeal. *See In re Bonham*, 229 F.3d 750, 761-62 (9th Cir. 2000). If the Court is incorrect, the Court grants such permission.

[2] The cases in the bankruptcy court are *In re Petters Company, Inc.*, Case No. 08-45257; *In re PC Funding, LLC*, Case No. 08-45326; *In re Thousand Lakes, LLC*, Case No. 08-45327; *In re SPF Funding, LLC*, Case No. 08-45328; *In re PL Ltd., Inc.*, Case No. 08-45329; *In re Edge One, LLC*, Case No. 08-45330; *In re MGC Finance, Inc.*, Case No. 08-45331; *In re PAC Funding, LLC*, Case No. 08-45371; and *In re Palm Beach Finance Holdings, Inc.*, Case No. 08-45392. All of these entities filed for bankruptcy protection between October 11 and October 19, 2008. A tenth entity (Petters Group Worldwide, LLC) is part of the jointly administered bankruptcy proceeding, but was not a subject of the trustee's motion to consolidate.

Petters was eventually convicted of 20 counts of fraud, conspiracy, and money laundering and was sentenced to 50 years' imprisonment for his role in what turned out to be "the largest case of investor fraud in Minnesota history and one of the largest in United States history." *In re Petters Co.*, 499 B.R. 342, 345 (Bankr. D. Minn. 2013); *Petters*, 663 F.3d at 378.

The appellants seek review of Judge Kishel's order granting the trustee's motion for substantive consolidation of PCI and the SPEs. Substantive consolidation is a common-law doctrine under which a bankruptcy court may combine separate bankruptcy estates into a single estate. *In re Owens Corning*, 419 F.3d 195, 205 (3d Cir. 2005). Creditors' claims against the separate debtors become claims against the consolidated entity, and liability between the consolidated entities is erased. *Id.* Although substantive consolidation has been recognized as a doctrine since *Sampsell v. Imperial Paper & Color Corp.*, 313 U.S. 215 (1941), the Eighth Circuit has addressed the doctrine only once, in *In re Giller*, 962 F.2d 796 (8th Cir. 1992).

By the time *Giller* was decided, there were already two leading cases on the issue of substantive consolidation: *In re Augie/Restivo Baking Co.*, 860 F.2d 515 (2d Cir. 1988), and *In re Auto-Train Corp.*, 810 F.2d 270 (D.C. Cir. 1987). As the Third Circuit later put it, "[u]ltimately most courts slipstreamed behind" either *Augie/Restivo* or *Auto-Train*. *Owens Corning*, 419 F.3d at 207. *Giller*, however, did not cite or discuss either *Augie/Restivo* or *Auto-Train*. Instead, *Giller* cited a bankruptcy-court case for a list of relevant factors for courts to consider in weighing requests for substantive consolidation. *Giller*, 962 F.2d at 799 (citing *In re N.S. Garrott & Sons*, 48 B.R. 13 (Bankr. E.D. Ark. 1984)).

The three factors cited by *Giller* are "1) the necessity of consolidation due to the interrelationship among the debtors; 2) whether the benefits of consolidation outweigh the harm

to creditors; and 3) prejudice resulting from not consolidating the debtors." *Id.* The Eighth Circuit did not say whether or how a creditor's reliance on the separate credit and identity of the debtors should factor into the analysis, although reliance was an important factor in both *Augie/Restivo* and *Auto-Train*. *Compare id. with Augie/Restivo*, 860 F.2d at 518 (identifying creditor reliance as one of two "critical factors") *and Auto-Train*, 810 F.2d at 276 (treating creditor reliance as a kind of affirmative defense to consolidation).

Judge Kishel conducted a three-day evidentiary hearing on the trustee's motion to consolidate. He heard testimony from a number of experts on such topics as the feasibility of conducting an accurate accounting of transfers between PCI and the SPEs and the standards for lender due diligence. He also heard testimony from insiders of PCI and the SPEs (including Deanna Coleman, Petters's coconspirator), as well as testimony from some of the creditors of the SPEs (appellants here) and their legal counsel.

After an exhaustive review of the evidence, Judge Kishel found that (1) PCI and the SPEs were interrelated and the SPEs were treated as part of PCI; (2) it would take at least 33,000 hours of accounting time, at a cost of $10 million, to reconcile all intercompany transfers between PCI and the SPEs; (3) the end result of that expensive and time-consuming accounting process would not be particularly reliable; (4) in lending to the SPEs, the appellants did not rely (or, with respect to one appellant, did not *reasonably* rely) on the corporate separateness of the SPEs; to the contrary, many of the appellants relied on the fact that the SPEs were *not* separate from PCI; (5) the benefits of consolidation outweigh any harm to creditors; and (6) a failure to consolidate would prejudice creditors because the administrative expense would diminish the estate and the trustee's avoidance cases could be compromised. Based on these findings — as well as on his

interpretation of *Giller* and his prediction as to how the Eighth Circuit would likely treat the issue of creditor reliance — Judge Kishel granted the trustee's motion for substantive consolidation.  These appeals followed.

## II.  ANALYSIS

Under 28 U.S.C. § 158(d)(2)(A), a district court must certify a judgment, order, or decree for direct appeal to the appropriate court of appeals if it finds one or more of the following factors:

> (i) the judgment, order, or decree involves a question of law as to which there is no controlling decision of the court of appeals for the circuit or of the Supreme Court of the United States, or involves a matter of public importance;
>
> (ii) the judgment, order, or decree involves a question of law requiring resolution of conflicting decisions; or
>
> (iii) an immediate appeal from the judgment, order, or decree may materially advance the progress of the case or proceeding in which the appeal is taken . . . .

As noted, two of the five sets of appellants join the trustee in arguing for certification.  The Court addresses the parties' arguments in turn.

The trustee argues that, because the appellants in two of the appeals have joined his motions to certify, the Court is required to certify those appeals.  *See* 28 U.S.C. § 158(d)(2)(B)(ii) (requiring certification when the court "receives a request made by a majority of the appellants and a majority of appellees (if any) to make the certification").  Each appeal involves *two* appellees, however — the trustee and the Official Committee of Unsecured Creditors of Petters Company, Inc. ("Creditors' Committee") — and the Creditors' Committee did not initially join the trustee's motions to certify.  The Court therefore did not (at least

initially) receive a request for certification from a *majority* of the appellees, as required by § 158(d)(2)(B)(ii).

More than a month after the briefing was complete on the trustee's motions to certify, the Creditors' Committee filed belated briefs supporting the motions. To trigger mandatory certification under § 158(d)(2)(B)(ii), however, the parties must make such a request "not later than 60 days after the entry of the judgment, order, or decree" from which appeal is taken. 28 U.S.C. § 158(d)(2)(E). The Creditors' Committee inexplicably failed to file its brief until after this deadline, and thus the parties' § 158(d)(2)(B)(ii) request is untimely.

There is one further wrinkle. Now that the Creditors' Committee has joined the trustee's motions, *all* of the parties in two of the appeals are seeking certification. Under § 158(d)(2)(A), the parties themselves may certify a case for immediate appeal so long as they do so "jointly" — and, more importantly for purposes of this case, a joint certification under § 158(d)(2)(A) may not be subject to the 60-day deadline. *See Peterson v. Somers Dublin Ltd.*, 729 F.3d 741, 745-46 (7th Cir. 2013) (suggesting that a joint certification under § 158(d)(2)(A) may not be subject to the 60-day deadline in § 158(d)(2)(E)).

As discussed below, however, although all of the parties in the two appeals seek certification, they do not agree on the reasons for certifying, so it is not clear whether their actions can be considered "joint[]" for purposes of § 158(d)(2)(A). *Cf.* Fed. R. Bankr. P. 8001(f)(2)(B) (describing the official form that parties may use to certify jointly). Moreover, under the unusual circumstances of this case — involving five appeals from the same order — it seems odd to treat all of the parties as acting "jointly" when three sets of appellants oppose certification. The Court therefore questions whether the parties have met the requirement for

joint certification under § 158(d)(2)(A).  That said, such joint certification apparently does not require the involvement of this Court, and thus, if the parties wish to raise this issue directly with the Eighth Circuit, they are welcome to do so.  Needless to say, if the parties in the two appeals persuade the Eighth Circuit to hear a direct appeal of their cases, this Court will stay the remaining three appeals pending the Eighth Circuit's decision.

Turning to the trustee's substantive arguments:  The trustee mainly argues that certification would "materially advance the progress of the case" because substantive consolidation will vastly simplify multiple aspects of it.  Among other things, substantive consolidation eliminates the need to trace assets and liabilities between PCI and the SPEs; it nullifies intercompany claims between PCI and the SPEs; and it may solidify the trustee's standing to recover assets for the benefit of creditors.  As the objecting appellees argue, however, this is not an argument for certification, but instead an argument on the merits of the trustee's motion to consolidate.  The question is not whether *substantive consolidation* will materially advance the litigation.  The question is whether *skipping district-court review* of Judge Kishel's order will materially advance the litigation.  The trustee's argument about the advantages of substantive consolidation (besides relying on contested factual findings) does not answer the latter question, and it is not enough to rely on the truism that leapfrogging district-court review always advances litigation.  *See Ritchie Capital Mgmt., L.L.C. v. Stoebner*, No. 12-CV-3038 (SRN), 2013 WL 2455981, at *4 (D. Minn. June 6, 2013) ("the argument that immediate appeal now, as opposed to appeal later, is more expeditious could be made in nearly all cases").

The trustee next argues that this case "involves a matter of public importance."  A case may involve a matter of public importance if it "transcend[s] the litigants and involves a legal

question the resolution of which will advance the cause of jurisprudence to a degree that is usually not the case." *In re Am. Home Mortg. Inv. Corp.*, 408 B.R. 42, 44 (D. Del. 2009) (citation and quotations omitted). Alternatively, a case may involve a matter of public importance if it has "important practical ramifications." *In re Qimonda AG*, 470 B.R. 374, 386 (E.D. Va. 2012). The trustee, however, identifies neither an important legal question in need of resolution nor any significant practical ramifications. True, the trustee has identified two investors in the SPEs who were forced to declare bankruptcy as a result of Petters's fraud, and whose bankruptcy cases now await the outcome of this case. But this does not represent the kind of broad impact on the public at large that renders a case a "matter of public importance."[3]

For their part, the appellants who join the trustee's motions — WestLB AG and Elistone Fund — argue that this case involves "a question of law as to which there is no controlling decision" because the Eighth Circuit has never addressed the question of creditor reliance. The Court does not agree. To begin with, it is not necessarily true that the Eighth Circuit's failure to mention creditor reliance in *Giller* means that *Giller* provides no guidance on the issue. The Eighth Circuit obviously must have been aware, at the time that it decided *Giller*, that the two

---

[3]*Cf. In re Wright*, 492 F.3d 829, 831 (7th Cir. 2007) (accepting immediate appeal because the issue to be resolved "arises in a large fraction of all consumer bankruptcy proceedings"); *In re Lehman Bros. Inc.*, No. 13-5381, 2013 WL 5272937, at *5 (S.D.N.Y. Sept. 18, 2013) ("Aside from their broad assertion that the repurchase market is a 'critical' component of the United States and global capital markets . . . Hudson and Doral do not explain how the resolution of these issues through certification of a direct appeal would advance the development of the law to an unusual degree, or impact the public at large."); *In re MPF Holding U.S. LLC*, 444 B.R. 719, 726 (Bankr. S.D. Tex. 2011) ("[t]he bar for this should be high" and should be reserved for such things as "the constitutionality of a provision of title 11, the applicability of nonbankruptcy law to matters arising in a bankruptcy case, the ability to change the venue of a title 11 case to an improper venue or any one of the important provisions governing consumer bankruptcies" (citation and quotations omitted)).

leading appellate cases on substantive consolidation considered creditor reliance to be an important factor. Nevertheless, the Eighth Circuit did not even mention creditor reliance in *Giller*. The appellants say that this is because creditor reliance was not an issue in *Giller*, but when it comes to formulating and applying multifactor tests of the kind adopted in *Giller*, *all* factors are at issue, whether or not they are present under the facts of the particular case. If the Eighth Circuit thought that creditor reliance was critically important, presumably the court would have noted the *absence* of creditor reliance as an important reason for upholding substantive consolidation in *Giller*. It is certainly reasonable to interpret the Eighth Circuit's silence as an indication that the Eighth Circuit does not intend that creditor reliance be treated as a major consideration.

In any event, even if the appellants are correct that the Eighth Circuit's silence on the issue leaves a gap in appellate authority, there is a substantial chance that the Eighth Circuit will never have to decide whether and how creditor reliance bears on the question of substantive consolidation in this case. As described above, Judge Kishel found, as a factual matter, that most of the creditors did *not* rely on the corporate separateness of the SPEs and that the one creditor who did so rely acted unreasonably. If these factual findings are upheld on appeal, the legal question that the appellants want answered — namely, whether a creditor's reliance should defeat substantive consolidation — will not have to be answered by either this Court or the Eighth Circuit.

Which brings the Court to another point: As many courts have noted, cases that depend on dense layers of factual findings — as this one certainly does — are generally not suitable for immediate appeal under § 158(d)(2). *See Weber v. U.S. Tr.*, 484 F.3d 154, 158 (2d Cir. 2007)

("Congress believed direct appeal would be most appropriate where we are called upon to resolve a question of law not heavily dependent on the particular facts of a case, because such questions can often be decided based on an incomplete or ambiguous record."); *In re Tribune Co.*, 477 B.R. 465, 472 (Bankr. D. Del. 2012) ("The issue concerning how this Court measured materiality is not a pure legal issue; it is not appropriate for direct appeal."); *In re Am. Home Mortg. Inv. Corp.*, 408 B.R. at 44 (declining to certify "mixed questions that implicate the particular circumstances of this case").

Long before reaching what the appellants characterize as the crucial legal issue in this case, the reviewing court will likely have to address a number of garden-variety evidentiary and *Daubert* disputes regarding Judge Kishel's factual findings. This Court certainly does not look forward to that task — after all, Judge Kishel's order spans 107 dense pages, and Judge Kishel devoted almost two years to drafting his order — but this Court must admit that there is no particular reason why these appeals demand immediate attention from the Eighth Circuit. To the contrary, it appears that the disputes among the parties could be substantially narrowed or clarified by a round of litigation in this Court. *See Weber*, 484 F.3d at 160 (noting "the salutary effects of allowing some cases to percolate through the normal channels"); *Mark IV Indus., Inc. v. N.M. Env't Dep't*, 452 B.R. 385, 390-91 (S.D.N.Y. 2011) ("Any cost to speed in permitting district court review will likely be outweighed by the benefit of such review on casting light on the issues and facilitating a wise and well-informed decision.").

The appellants also contend that this case involves "a question of law requiring resolution of conflicting decisions." That is clearly incorrect, however. When § 158(d)(2) refers to "conflicting decisions," it means conflicting decisions *within the same circuit*. There is only one

decision on substantive consolidation in the Eighth Circuit, so obviously there is no conflict. That the various circuits have adopted various tests for substantive consolidation is irrelevant. *In re Gen. Motors Corp.*, 409 B.R. 24, 28 (Bankr. S.D.N.Y. 2009) ("While a circuit split might be an appropriate matter for consideration for the Supreme Court, in deciding whether or not it wishes to grant *certiorari*, it doesn't satisfy § 158(d)(2).").

The appellants next contend that this case involves a "matter of public importance" because the issues of creditor reliance and substantive consolidation are crucial to lenders and investors. Again, however, the thicket of factual issues in this case may well moot any legal questions surrounding creditor reliance. Moreover, there is ample case law in other circuits on these issues for the edification of lenders and investors. A ruling from the Eighth Circuit would be helpful to lenders and investors within the Circuit, but it would have little impact on lenders and investors in the rest of the nation. And the appellants have not shown that there is a pressing need for swift resolution of these issues even within the Eighth Circuit; as Judge Kishel noted, requests for substantive consolidation are very rare in this District (and apparently in the Eighth Circuit, given the dearth of case law).

Finally, Elistone Fund argues that, even if the Court does not certify the other appeals, it should certify Elistone Fund's appeal because Judge Kishel used consolidation to "obviate" Elistone Fund's "undisputed" security interest in the proceeds of the trustee's fraudulent-conveyance and unjust-enrichment claims. Putting aside the fact that this argument relates to the merits of consolidation rather than to whether district-court review should be skipped, Elistone Fund has not accurately described Judge Kishel's order. Judge Kishel simply found that Elistone Fund's asserted security interest was legally questionable and held that, as a result, any harm to

Elistone Fund was outweighed by the benefits of consolidation.  So far as it appears to this Court, Judge Kishel did not actually rule that Elistone Fund's security interest was invalid, and the fact that Judge Kishel raised questions about the validity of that security interest is certainly no basis for certifying an immediate appeal to the Eighth Circuit.  The Court therefore denies the trustee's motions to certify.

The next step in this case is for the parties to brief the appeals.  It appears that the issues in these appeals will substantially overlap, and the Court does not wish to wade through — or to force the parties to pay for — a large amount of repetitive briefing.  The Court anticipates that the vast majority of issues on appeal can be addressed by one set of briefs: a consolidated opening brief on behalf of all appellants, a consolidated response brief on behalf of all appellees, and a consolidated reply brief on behalf of all appellants.  Any issue that *can* be jointly addressed *must* be jointly addressed.  Separate briefs should not be filed unless absolutely necessary, and those separate briefs should be strictly limited to issues that affect one (and only one) set of appellants.  Each argument should be made only once.  The Court directs the parties to propose a briefing schedule that is consistent with these instructions.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. The motions of appellee Douglas A. Kelley to certify bankruptcy appeal [ECF No. 11 in Case No. 13-CV-3611; ECF No. 14 in Case No. 13-CV-3614; ECF No. 15 in Case No. 13-CV-3615; ECF No. 12 in Case No. 13-CV-3616; and ECF No. 10 in Case No. 13-CV-3618] are DENIED.

2.  The parties are directed to meet and confer regarding a proposed briefing schedule for these appeals.  The parties must file a joint letter with the Court no later than August 29, 2014 describing their proposed briefing schedule.  The proposal should identify (1) each brief that will be filed; (2) the issues that will be addressed in each brief; (3) the maximum length of each brief (stated in number of words); and (4) the deadline for filing each brief.  If the parties propose that any separate briefs be filed, the parties must also explain why the issues that will be addressed in those separate briefs cannot be addressed in the consolidated briefs described above.  If the parties are unable to agree on a proposed briefing schedule, they must file a joint letter with the Court no later than August 29, 2013 describing the nature of their disagreement.  After the briefing is complete, the Court will contact the parties to schedule oral argument.

Dated:  July 25, 2014                                   s/Patrick J. Schiltz
                                                        Patrick J. Schiltz
                                                        United States District Judge