UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| WESTLB AG, | Case No. 13-CV-3611 (PJS) |
| Appellant, | |
| v. | ORDER |
| DOUGLAS A. KELLEY, Chapter 11 Trustee; UNSECURED CREDITORS COMMITTEE, | |
| Appellees. | |
| OPPORTUNITY FINANCE, LLC; OPPORTUNITY FINANCE SECURITIZATION, LLC; OPPORTUNITY FINANCE SECURITIZATION II, LLC; OPPORTUNITY FINANCE SECURITIZATION III, LLC; INTERNATIONAL INVESTMENT OPPORTUNITIES, LLC; SABES FAMILY FOUNDATION; SABES MINNESOTA LIMITED PARTNERSHIP; ROBERT W. SABES; JANET F. SABES; JON R. SABES; STEVEN SABES, | Case No. 13-CV-3614 (PJS) |
| Appellants, | |
| v. | |
| DOUGLAS A. KELLEY, Chapter 11 Trustee; UNSECURED CREDITORS COMMITTEE, | |
| Appellees. | |

| | |
|---|---|
| DZ BANK AG DEUTSCHE ZENTRAL-GENOSSENSCHAFTSBANK, FRANKFURT AM MAIN, | Case No. 13-CV-3616 (PJS) |

Appellant,

v.

DOUGLAS A. KELLEY, Chapter 11
Trustee; UNSECURED CREDITORS
COMMITTEE,

Appellees.

| | |
|---|---|
| EPSILON GLOBAL ACTIVE VALUE FUND I-B LTD.; EPSILON GLOBAL ACTIVE VALUE FUND II, L.P.; EPSILON GLOBAL ACTIVE VALUE FUND II-B, L.P.; EPSILON GLOBAL ACTIVE VALUE FUND II-B, LTD.; EPSILON GLOBAL ACTIVE VALUE FUND III LTD.; EPSILON GLOBAL ACTIVE VALUE FUND LTD.; EPSILON GLOBAL ACTIVE VALUE FUND, L.P.; EPSILON GLOBAL ASSET MANAGEMENT LTD.; EPSILON GLOBAL MASTER FUND II, L.P., a/k/a Epsilon Global Master Fund II, L.P., Sub. 1; EPSILON GLOBAL MASTER FUND, L.P.; EPSILON STRUCTURED STRATEGIES MASTER FUND, L.P., f/k/a Epsilon Global Master Fund III Structured Strategies, L.P.; EPSILON INVESTMENT MANAGEMENT, LLC; STAFFORD TOWN LTD.; WESTFORD ASSET MANAGEMENT, LLC; WESTFORD GLOBAL ASSET MANAGEMENT LTD.; WESTFORD | Case No. 13-CV-3618 (PJS) |

SPECIAL SITUATIONS FUND LTD.;
WESTFORD SPECIAL SITUATIONS
FUND, L.P.; WESTFORD SPECIAL
SITUATIONS MASTER FUND, L.P.;
STEVE G. STEVANOVICH,

                    Appellants,

v.

DOUGLAS A. KELLEY, Chapter 11
Trustee; UNSECURED CREDITORS
COMMITTEE,

                    Appellees.

Patrick J. McLaughlin and Thomas O. Kelly III, DORSEY & WHITNEY LLP, for
appellant in Case No. 13-CV-3611.

Kannon K. Shanmugam, Joseph G. Petrosinelli, and Jonathan M. Landy,
WILLIAMS & CONNOLLY LLP; John R. McDonald and Kari S. Berman, BRIGGS
AND MORGAN, P.A., for appellants in Case No. 13-CV-3614.

H. Peter Haveles, Jr., KAYE SCHOLER LLP; Thomas H. Boyd and Michael A.
Rosow, WINTHROP & WEINSTINE, P.A., for appellant in Case No. 13-CV-3616.

Robert T. Kugler and Bryant D. Tchida, STINSON LEONARD STREET LLP, for
appellants in Case No. 13-CV-3618.

Mark D. Larsen, Kirstin D. Kanski, Daryle L. Uphoff, James A. Lodoen, Terrence
J. Fleming, and Adam C. Ballinger, LINDQUIST & VENNUM LLP, for appellee
Douglas A. Kelley.

David E. Runck and Lorie A. Klein, FAFINSKI MARK & JOHNSON, PA, for
appellee Unsecured Creditors Committee.

Four groups of lenders appeal from the November 22, 2013 order of Chief United States Bankruptcy Judge Gregory F. Kishel granting the trustee's motion to substantively consolidate nine bankruptcy estates.[1]  Appellees—the bankruptcy trustee and the unsecured creditors committee (collectively "the trustee")—move to dismiss these appeals on the basis that appellants lack standing to appeal.  For the reasons that follow, the trustee's motion is granted, and these appeals are dismissed.

## I.  BACKGROUND

These appeals arise out of the jointly administered bankruptcy proceedings of Petters Company, Inc. ("PCI") and eight "special-purpose entities" ("SPEs") wholly owned and controlled by PCI or Thomas J. Petters.[2]  These entities sought bankruptcy protection in October 2008 shortly after an insider reported to the FBI that Petters was running a multi-billion-dollar Ponzi scheme through PCI.  *United States v. Petters*, 663 F.3d 375, 379 (8th Cir. 2011).  Petters was eventually convicted of 20 counts of fraud,

---

[1] The appellant in a fifth case voluntarily dismissed its appeal with prejudice.  *See Elistone Fund v. Kelley*, No. 13-CV-3615, ECF No. 33.

[2] The cases in the bankruptcy court are *In re Petters Company, Inc.,* Case No. 08-45257; *In re PC Funding, LLC,* Case No. 08-45326; *In re Thousand Lakes, LLC,* Case No. 08-45327; *In re SPF Funding, LLC,* Case No. 08-45328; *In re PL Ltd., Inc.,* Case No. 08-45329; *In re Edge One, LLC,* Case No. 08-45330; *In re MGC Finance, Inc.,* Case No. 08-45331; *In re PAC Funding, LLC,* Case No. 08-45371; and *In re Palm Beach Finance Holdings, Inc.,* Case No. 08-45392.  All of these entities filed for bankruptcy protection between October 11 and October 19, 2008.  A tenth entity (Petters Group Worldwide, LLC) is part of the jointly administered bankruptcy proceeding, but was not a subject of the trustee's motion to consolidate.

conspiracy, and money laundering and was sentenced to 50 years' imprisonment for his

role in what turned out to be "the largest case of investor fraud in Minnesota history

and one of the largest in United States history." *In re Petters Co.*, 499 B.R. 342, 346

(Bankr. D. Minn. 2013); *Petters*, 663 F.3d at 378.

Appellants are lenders who extended financing to one or more of the SPEs either

directly or indirectly through one of the other lenders. All of the appellants were net

winners from the Ponzi scheme. Tr. App. 5581. In other words, appellants not only

regained their initial investments in the SPEs, but they also garnered tens or even

hundreds of millions of dollars in profits—profits that were funded with money stolen

from other investors. Because they were net winners, none of the appellants has filed a

proof of claim in the bankruptcy proceeding. Nor would there appear to be anything

for appellants to claim; at the time of the FBI's raid in September 2008, none of the SPEs

had any assets. App. 221-22.

Appellants seek review of Judge Kishel's order granting the trustee's motion for

substantive consolidation of PCI and the SPEs. Substantive consolidation is a common-

law doctrine under which a bankruptcy court may combine separate bankruptcy estates

into a single estate. *In re Owens Corning*, 419 F.3d 195, 205 (3d Cir. 2005). As with

corporate-veil piercing and similar doctrines, substantive consolidation is generally

justified at least partly on the ground that the separate corporate existence of the

debtors was disregarded in practice and therefore should be disregarded in law. *Id.* ("The concept of substantively consolidating separate estates begins with a commonsense deduction. Corporate disregard as a fault may lead to corporate disregard as a remedy." (footnote omitted)).

When a court grants substantive consolidation, creditors' claims against the separate debtors become claims against the consolidated entity, and liabilities among the consolidated entities are erased. *Id.* This has the effect of providing a bigger pool of assets from which creditors can draw, but it can also work to the disadvantage of creditors whose potential recovery is diluted. In particular, a creditor whose debtor had some assets may now be forced to share those assets with creditors of debtors who had no assets.

After an exhaustive review of the evidence, Judge Kishel granted the trustee's motion for substantive consolidation. Judge Kishel found that PCI and the SPEs were interrelated; that the lenders did not rely (or did not reasonably rely) on the corporate separateness of the SPEs; that reconciling intercompany transfers between PCI and the SPEs would be an extremely complex and expensive task whose result would not be particularly reliable; that the benefits of consolidation outweigh any harm to creditors; and that failing to consolidate would prejudice creditors. These appeals followed.

## II.  ANALYSIS

The trustee moves to dismiss for lack of jurisdiction, arguing that, because appellants are net winners from the Ponzi scheme who have no claims against the bankruptcy estate, they lack standing to appeal the substantive-consolidation order. Appellants respond that (1) the trustee should be estopped from raising the issue of standing, and (2) they do, in fact, have standing to appeal.  The Court considers each issue in turn.

### A.  Estoppel

Appellants first argue that the trustee should be estopped from raising the issue of standing because earlier in these proceedings he argued that this Court has jurisdiction over this appeal.  The Court disagrees.[3]

Judicial estoppel is an equitable doctrine under which a court may prevent a party from deliberately changing its position on a legal or factual issue during the course of a lawsuit.  *New Hampshire v. Maine*, 532 U.S. 742, 749-50 (2001).  The purpose of the doctrine is to protect the integrity of the judicial process.  *Id.*  Among the factors a

---

[3]Because the Court chooses not to estop the trustee from raising the issue of standing, the Court need not address the trustee's contention that he *cannot* be estopped because his argument relates to the subject-matter jurisdiction of the Court.  That said, the Court notes that the Eighth Circuit does indeed seem to treat the "person aggrieved" doctrine—which governs the issue of appellate standing in bankruptcy appeals—as a matter of subject-matter jurisdiction.  *See In re AFY*, 734 F.3d 810, 818-21 (8th Cir. 2013) (holding that the district court correctly determined that it lacked subject-matter jurisdiction because the appellants were not "persons aggrieved").

court may consider in deciding whether to apply the doctrine are (1) whether the party's current position is "clearly inconsistent" with its former position; (2) whether the party succeeded in persuading the court to accept its earlier position; and (3) whether the party would derive an unfair advantage or impose an unfair detriment on the opposing party if it were not estopped. *Id.* at 750-51.

Application of the doctrine is not warranted when the party's prior position was the product of inadvertence or mistake. *Id.* at 753; *EEOC v. CRST Van Expedited, Inc.*, 679 F.3d 657, 680 (8th Cir. 2012). Whether to apply judicial estoppel is within the discretion of the Court. *New Hampshire*, 532 U.S. at 750.

Shortly after these appeals were docketed, the trustee filed motions to certify them for immediate appeal to the Eighth Circuit. In his briefing in support of the motions, the trustee represented that "[t]his Court has jurisdiction over this motion and the pending appeal pursuant to 28 U.S.C. §§ 158(a) and 1334 and Federal Rule of Bankruptcy Procedure 8001(f)." *See, e.g.*, Case No. 13-CV-3611, ECF No. 13 at 3. In its order denying the trustee's motions, the Court found that it had jurisdiction under § 158(a)(1), which permits appeals as of right from "final judgments, orders, and decrees[.]" ECF No. 32 at 4 n.1. Alternatively, the Court granted permission to appeal under § 158(a)(3), which allows the court to grant leave to appeal from interlocutory orders. *Id.*

Appellants argue that the trustee's earlier argument that this Court has jurisdiction should estop him from now arguing that appellants lack standing. The Court disagrees. As an initial matter, the trustee's earlier assertion regarding jurisdiction is not "clearly inconsistent" with his current assertion that appellants lack standing, because the trustee was earlier addressing the issue of finality, while now he is addressing the issue of standing. Whether an order regarding substantive consolidation is a "final" order appealable as of right under § 158(a)(1) is not entirely clear. The trustee correctly anticipated that the Court would be concerned about the issue of finality, and the trustee quite appropriately focused on that issue. Given the context, the trustee's earlier statement about jurisdiction appears to concern only the issue of finality under § 158(a) and not the issue of standing.

Moreover, the trustee's failure to raise the issue of standing earlier was almost certainly inadvertent.[4] It would have made no sense for the trustee to deliberately sandbag appellants on the issue of standing. The trustee sought to certify these cases for immediate appeal to the Eighth Circuit to expedite a return to the bankruptcy court and minimize the delay of the bankruptcy case. A dismissal for lack of standing would

---

[4]For this reason, the Court also rejects appellants' cursory contention that the trustee waived the issue of standing. *See United States v. Olano*, 507 U.S. 725, 733 (1993) (waiver is the intentional relinquishment or abandonment of a known right).

have served that purpose even better than an immediate appeal to the Eighth Circuit. The trustee gained nothing by failing to raise the issue of standing earlier.

It is also worth noting that, at the time that the trustee filed his motions to certify, there was an appellant who unquestionably had standing—Elistone Fund. Unlike the other appellants, Elistone Fund was a net loser from the Ponzi scheme, and it filed a proof of claim in the PCI bankruptcy case. As a result, Elistone Fund was a creditor with a direct interest in the distribution of the assets of the bankruptcy estate and therefore had standing to appeal orders affecting that distribution. *Cf. Hartman Corp. of Am. v. United States*, 304 F.2d 429, 430 (8th Cir. 1962) (creditors are normally parties that can be "aggrieved" by a bankruptcy order). Elistone Fund later settled with the trustee and dismissed its appeal, but at the time that the trustee argued that this Court had jurisdiction, Elistone was still among the appellants, and thus it is understandable why the trustee would not have focused on the issue of standing. Once the only appellant who was a net loser from the Ponzi scheme settled out, it was natural for the trustee to turn his attention to the standing of the remaining appellants.

Finally, there is little prejudice to appellants in permitting the trustee to raise the issue of standing at this stage. Appellants cite no authority for the proposition that the trustee had to raise the issue of standing before he filed his brief addressing the merits of appellants' appeals. At worst, appellants were required to undergo one round of

-10-

unnecessary briefing on the issue of immediate certification.  This is not the sort of

prejudice that should result in the drastic remedy of estoppel, particularly where the

party to be estopped gained no advantage from failing to raise the issue earlier.  The

Court therefore declines to estop the trustee from raising the issue of standing.

### B.  Standing

Appellate standing in bankruptcy cases is more limited than either Article III

standing or ordinary prudential standing.  *In re AFY*, 734 F.3d 810, 819 (8th Cir. 2013).

In order to have standing to appeal a bankruptcy order, an appellant must be a "person

aggrieved" by that order.  *In re Zahn*, 526 F.3d 1140, 1142 (8th Cir. 2008).

The "person aggrieved" doctrine originally derives from the Bankruptcy Act of

1898.  *In re AFY*, 734 F.3d at 819 n.10.  Although the statutory basis for the doctrine has

since been repealed, courts continue to apply it in light of the pressing need to limit the

class of people who may appeal bankruptcy orders:

> This rule of appellate standing is necessary to insure
> that bankruptcy proceedings are not unreasonably delayed
> by protracted litigation that does not serve the interests of
> either the bankrupt's estate or its creditors.  The nature of
> bankruptcy litigation, with its myriad of parties, directly and
> indirectly involved or affected by each order and decision of
> the bankruptcy court, mandates that the right of appellate
> review be limited to those persons whose interests are
> directly affected.

*In re El San Juan Hotel*, 809 F.2d 151, 154 (1st Cir. 1987); *see also In re Ernie Haire Ford, Inc.*,

764 F.3d 1321, 1327 (11th Cir. 2014) ("The purpose of the person aggrieved standard is

to prevent bankruptcies from being needlessly prolonged by parties whose interests are

not central to the process.").

Conversely, the right to participate in proceedings before a bankruptcy court is

broader than the "person aggrieved" status necessary to have standing to appeal an

order of that bankruptcy court. *See In re AFY*, 734 F.3d at 824.  In other words, the fact

that a party was permitted to participate in bankruptcy-court proceedings does not

mean that the party necessarily has standing to appeal orders entered in those

proceedings.

"'Person aggrieved' is, of course, a term of art: almost by definition, all

appellants may claim in some way to be 'aggrieved,' else they would not bother to

prosecute their appeals." *Travelers Ins. Co. v. H.K. Porter Co.*, 45 F.3d 737, 741 (3d Cir.

1995).  To qualify as a "person aggrieved," an appellant must have a "financial stake in

the bankruptcy court's order, meaning [it was] directly and adversely affected

pecuniarily by the order." *In re Peoples*, 764 F.3d 817, 820 (8th Cir. 2014) (citation and

quotations omitted).  Courts sometimes explain that a person has standing to appeal an

order of a bankruptcy court only when the order "diminishes the person's property,

increases the person's burdens, or impairs the person's rights." *In re Marlar*, 267 F.3d

749, 753 n.1 (8th Cir. 2001) (citation and quotations omitted).

Even when an appellant has a direct pecuniary interest in a bankruptcy-court

order, he may nevertheless lack standing to appeal that order if the interest he seeks to

vindicate is not one that is protected by the Bankruptcy Code. *In re Ernie Haire Ford,*

*Inc.*, 764 F.3d at 1327 ("Assuming arguendo that Atkinson has suffered a direct harm as

a result of the amended Litigation Bar Date, he is still not a person aggrieved because

his interest is not protected or regulated by the Bankruptcy Code."); *In re Moran*, 566

F.3d 676, 681 (6th Cir. 2009) ("All of Stark's asserted interests are either not directly

harmed by the bankruptcy court's order or are not interests that bankruptcy law—in

particular the law governing abandonment—protects. "); *In re Harwald Co.*, 497 F.2d 443,

444-45 (7th Cir. 1974) (no appellate standing because, although unsuccessful bidders

suffered injury from order confirming sale, their claim that the sale violated antitrust

laws did not vindicate an interest protected by the Bankruptcy Code).

Whether an appellant is a "person aggrieved" is ordinarily a question of fact. *In*

*re Hecker*, 496 B.R. 541, 550 (B.A.P. 8th Cir. 2013).  But where the relevant facts are

undisputed, courts may treat the question as an issue of law.  *Cf. In re El San Juan Hotel*,

809 F.2d at 154 n.3.  Here, the relevant facts are undisputed.

1.  Interest as Defendants in Avoidance Actions

As discussed above, Judge Kishel's substantive-consolidation order will have a major impact on how the assets of the bankruptcy estates are distributed to the creditors of those estates.  Because appellants do not presently have claims against any of the estates, however, they do not currently have any interest in how the assets of those estates are distributed.[5]

Instead, the reason appellants have appealed Judge Kishel's order is to gain a strategic advantage in the avoidance actions that the trustee has brought against them.  As noted, appellants profited from the Ponzi scheme when hundreds of millions of dollars stolen from others were paid to them.  The trustee has brought avoidance actions against appellants to seek to recover this stolen loot and distribute it equitably among the victims of the Ponzi scheme; appellants are resisting those actions, seeking to retain the stolen loot for themselves.[6]  The trustee admits that the substantive-

---

[5]Appellants argue that although they have not filed any claims in the bankruptcy proceeding, they are nevertheless creditors because they have "contingent claims" against the consolidated estate.  The Court addresses that argument below.

[6]Whether appellants knew or suspected that the money was stolen at the time it was paid to them is disputed and will presumably be litigated in the avoidance actions.

consolidation order may help him in the avoidance actions, primarily by strengthening his argument that *he* has standing to bring those avoidance actions.[7]

Understandably, appellants would prefer not to have to defend the trustee's avoidance actions. Because the substantive-consolidation order makes it more likely that those actions will go forward, appellants seek to have the order overturned. A long line of cases establishes, however, that having to defend a separate lawsuit does not render a litigant "aggrieved" for purposes of standing.[8]

---

[7]Generally speaking, a bankruptcy trustee has the same right to bring an avoidance action that a creditor of the estate would have had. Appellants profited from the Ponzi scheme when various SPEs made payments to them, but the estates of those SPEs have no creditors (because, again, the lenders associated with those SPEs were Ponzi-scheme winners). Because the estates have no creditors, appellants can argue that the trustee does not have standing to bring avoidance actions against them. Substantive consolidation weakens appellants' argument, because it creates one estate that has numerous creditors.

[8]*In re Ernie Haire Ford, Inc.*, 764 F.3d 1321, 1327 (11th Cir. 2014) ("Because Atkinson's sole interest is that of an adversary defendant in avoiding liability, he is not a person aggrieved for the purposes of appealing from an order of the bankruptcy court.") (footnote omitted); *In re Moran*, 566 F.3d 676, 681 (6th Cir. 2009) ("The interest Stark has in avoiding a state-court lawsuit, or even in affecting who has the right to bring that suit, is not the sort of interest that bankruptcy law in general is designed to protect."); *In re LTV Steel Co.*, 560 F.3d 449, 453 (6th Cir. 2009) (2-1 decision) ("Although that order paved the way for the ACC to sue him, we are aware of no court that has held that the burden of defending a lawsuit, however onerous or unpleasant, is the sort of direct and immediate harm that makes a party 'aggrieved' so as to confer standing in a bankruptcy appeal."); *Travelers Ins. Co. v. H.K. Porter Co.*, 45 F.3d 737, 743 (3d Cir. 1995) ("We are satisfied that standing is precluded if the only interest in the bankruptcy court's order that can be demonstrated is an interest as a potential defendant in an adversary proceeding."); *In re El San Juan Hotel*, 809 F.2d 151, 155 (1st Cir. 1987) ("a

(continued...)

-15-

Appellants argue that these cases are distinguishable because the bankruptcy-court orders simply permitted lawsuits to go forward and did not affect the defenses that the appellants could assert in those lawsuits. *See, e.g.*, *In re El San Juan Hotel*, 809 F.2d at 155 ("The former trustee does have an interest in defending himself against liability, but the order in question does not prevent [him] from doing just that, or from asserting any claims or defenses he may have, including a motion for summary judgment."). Appellants argue that here, by contrast, Judge Kishel's substantive-consolidation order will materially weaken their defenses in the avoidance actions. Specifically, appellants argue that the order (1) gives the trustee another basis for contending that he has standing to bring the avoidance actions by creating a group of predicate creditors in whose shoes the trustee may stand; (2) expands the trustee's

---

[8](...continued)
debtor, contesting a bankruptcy court order, whose only interest or burden is as a future party defendant, does not qualify as an 'aggrieved person'"); *In re Fondiller*, 707 F.2d 441, 443 (9th Cir. 1983) (no standing where "appellant's only demonstrable interest in the order is as a potential party defendant in an adversary proceeding"); *In re Snyder*, 4 F.2d 627, 628 (9th Cir. 1925) (no right to review of order whose only impact on the appellant would be to subject him to suit); *In re First Cincinnati, Inc.*, 286 B.R. 49, 53 (B.A.P. 6th Cir. 2002) ("an order which has the limited effect of nudging a party into someone else's litigation sights is not normally appealable by that party"); *In re Ashford Hotels, Ltd.*, 235 B.R. 734, 739 (S.D.N.Y. 1999) ("this Court concludes that Appellants do not have standing: they are not directly and adversely affected pecuniarily by the Bankruptcy Court's Order except as adversaries to the Debtor's estate in other litigations" (citations and quotations omitted)); *Land-O-Sun Dairies, Inc. v. Pine State Creamery Co.*, 200 B.R. 125, 127 (E.D.N.C. 1996) ("The likelihood of becoming a defendant in a related claim does not confer standing to contest an order of the Bankruptcy Court.").

potential recovery by enlarging the pool of predicate creditors as well as by increasing the number of transfers subject to attack; and (3) turns appellants into initial transferees of the consolidated debtor, thereby depriving them of defenses they would have had as subsequent transferees under 11 U.S.C. § 550(b).

The Court is not persuaded that these circumstances render this case materially distinguishable from other cases in which an appellant's interest in avoiding litigation has been held insufficient to confer standing.  It is true that a number of these cases emphasized that the appellants' rights were not affected because the appellants could assert the same defenses that they could have asserted in the absence of the order permitting the litigation to go forward.  Nevertheless, the fact remains that in all of these cases, the appellants lost their very best "defense"—their "defense" of not having to defend the lawsuit at all.

Setting that aside, courts have rejected the argument that being deprived of a defense to an adversary action gives an appellant standing to appeal an order of a bankruptcy court.  *See In re Ernie Haire Ford, Inc.*, 764 F.3d 1321, 1326-27 (11th Cir. 2014).  In *Ernie Haire Ford*, the bankruptcy court confirmed a Chapter 11 plan that set a deadline for the liquidating agent to bring lawsuits against third parties on behalf of the estate.  *Id.* at 1323-24.  Any lawsuit not brought by that deadline would be "conclusively

deemed waived or abandoned." *Id.* at 1324.  The plan further granted "any defendant"

the right to move the bankruptcy court to enjoin an untimely suit.  *Id.*

Over two years after the deadline had passed, the liquidating agent instituted a

lawsuit against the appellant.  *Id.*  Invoking his rights under the plan, the appellant

moved to enjoin the lawsuit.  *Id.*  The debtor then filed a motion to extend the deadline,

which the bankruptcy court granted.  *Id.*

As in this case, the appellant argued that he had standing to appeal the

bankruptcy court's order because the order "hampered [his] ability to defend against

liability by removing a defense that would have otherwise been available to him . . . ."

*Id.* at 1326-27.  The appellant contended that, unlike other cases that merely permitted

litigation to proceed, the bankruptcy court order "deprived him of an affirmative

right . . . ."  *Id.* at 1326.

The Eleventh Circuit did not dispute the premise of the appellant's argument—

that the bankruptcy-court order had impaired appellant's ability to defend the

adversary action—but the court nevertheless held that the appellant lacked standing to

appeal that order.  Even assuming that the appellant's alleged harm was sufficiently

direct to satisfy the "person aggrieved" standard, the Eleventh Circuit explained, "he is

still not a person aggrieved because his interest is not protected or regulated by the

Bankruptcy Code."  *Id.* at 1327.  Indeed, an adversary defendant's interest in avoiding

liability to the estate is "antithetical to the goals of bankruptcy," the primary purpose of which is to minimize injury to creditors. *Id.* Simply put, the desire to avoid liability to the estate does not render a litigant "aggrieved" for purposes of appealing from an order of the bankruptcy court. *Id.*

Although *Ernie Haire Ford* appears to be unique in the explicitness with which it held that an appellant does not have standing to appeal even when the bankruptcy-court order impairs his defenses in a separate lawsuit, other cases have reached the same conclusion. For example, in *In re Moran*, the debtor was a shareholder in a closely-held corporation, but did not initially disclose that asset in his bankruptcy petition. 566 F.3d 676, 678 (6th Cir. 2009). The trustee later learned of the debtor's interest in the corporation and moved to reopen the bankruptcy case. *Id.* at 679. The trustee eventually reached a settlement with the debtor under which the trustee agreed to ask the bankruptcy court to treat the stock as never having belonged to the bankruptcy estate. *Id.* This would allow the debtor to retain the shares. *Id.* at 678.

Another shareholder in the corporation objected and submitted an offer to purchase the stock from the estate. *Id.* at 680. The bankruptcy court rejected the other shareholder's offer and granted the trustee's motion to abandon the stock to the debtor as of the date of the bankruptcy filing. *Id.*

Notably, the debtor had a separate state-court lawsuit pending against the other shareholder concerning ownership and control of the corporation. *Id.* at 679. Both the debtor and the other shareholder agreed that the order granting the trustee's motion gave the debtor an advantage in that separate litigation. *Id.* at 679 & n.1. Specifically, if the bankruptcy estate owned the shares instead of the debtor, then some or all of the debtor's claims could fail. *Id.* at 679. By granting the trustee's motion to abandon the shares as of the date of the bankruptcy filing, the bankruptcy court removed the other shareholder's ability to argue that the debtor did not own the shares.

Nevertheless, the Sixth Circuit held that the shareholder lacked standing to appeal the bankruptcy court's order. The court held that the shareholder's interests as a shareholder, as a state-court defendant, and as an unsuccessful bidder for the stock "are not the sort of interests that support standing for the purpose of his bankruptcy appeal . . . ." *Id.* at 680. The court gave short shrift to the appellant's argument that the bankruptcy order gave an advantage to the debtor in the parties' state-court litigation, stating that the appellant's interests "are adequately protected in state court" and that any interest he had in "affecting who has the right to bring that suit" is not protected by bankruptcy law. *Id.* at 681.

True, the court also opined that the shareholder's ability to defend himself had not been impaired. Specifically, the court observed that any defenses that the

shareholder could have asserted if the trustee had *properly* abandoned the stock to the

debtor—or if the trustee had brought the same suit on behalf of the estate—would still

be available.  *Id.*  The fact remains, however, that under the actual circumstances of the

case—as opposed to the hypothetical circumstances posited by the Sixth Circuit—the

appellant's defenses were unquestionably compromised by the bankruptcy court's

order.  Nevertheless, the appellant did not have standing to attack that order as

erroneous on appeal.

*Land-O-Sun Dairies v. Pine State Creamery Co.* is another case in which the

bankruptcy court's order did more than just allow litigation to go forward.  In *Land-O-*

*Sun Dairies*, the appellant had agreed to purchase the debtor's assets.  200 B.R. 125, 126

(E.D.N.C. 1996).  The sale was conditioned on the bankruptcy court's approval.  *Id.*

Before the bankruptcy court approved the sale, however, the appellant changed its

mind and advised the court that it was not in a position to close the sale.  *Id.*  The

bankruptcy court approved the sale anyway.  *Id.*

On appeal of the bankruptcy-court order, the district court held that the

appellant lacked standing because its main interest was in avoiding a separate breach-

of-contract action for refusing to go forward with the sale.  *Id.* at 127.  Crucially, the

appellant lacked standing even though the order approving the sale did not merely

allow a separate lawsuit to go forward; it actually changed the legal relationship

between the parties and thereby affected the ability of the appellant to defend that lawsuit.  The bankruptcy court's approval was a condition precedent of the sale. Without it, the debtor would not have a valid breach-of-contract claim against the appellant.  *Id.*  Again, though, the fact that the bankruptcy-court order had an impact on the ability of the appellant to defend a separate lawsuit did not give the appellant standing to appeal that order.

In this case, as in these other cases, appellants' asserted interest in avoiding liability to the consolidated bankruptcy estate is not the sort of interest that is protected by the Bankruptcy Code.  Indeed, as *Ernie Haire Ford* put it, appellants' interest is "antithetical to the goals of bankruptcy."  *In re Ernie Haire Ford*, 764 F.3d at 1327.  For that reason, the fact that Judge Kishel's substantive-consolidation order may have an impact on appellants' ability to defend themselves in avoidance actions does not give appellants standing to appeal that order.[9]

### 2.  Interest as Creditors with Contingent Claims

Appellants next argue that they are, in fact, creditors of the consolidated bankruptcy estate and therefore have standing to appeal for that reason.  Specifically,

---

[9]In so holding, the Court recognizes that courts have occasionally permitted adversary defendants to appeal substantive-consolidation orders.  *See, e.g., In re Bonham*, 229 F.3d 750 (9th Cir. 2000).  In those cases, however, no one appears to have challenged the standing of the appellants, and the courts did not address the "person aggrieved" doctrine.  The Court therefore does not regard these cases as being particularly helpful.

appellants contend that they have "contingent claims" because, if they should lose the

avoidance actions, they will at that point become net losers from the Ponzi scheme who

may then assert claims against the bankruptcy estate.  As a result, say appellants, they

meet the formal statutory definition of "creditor" and should therefore be accorded

standing to appeal.  *See* 11 U.S.C. § 101(5), (10) (defining "claim" and "creditor"); 11

U.S.C. § 502(h) (allowing losers in certain avoidance actions to bring claims against the

estate).

Whether or not appellants meet the formal definition of "creditor" under the

Bankruptcy Code, the fact remains that the contingent and speculative nature of

appellants' hypothetical future bankruptcy claims is at odds with the "person

aggrieved" standard.  That standard requires that the appellant have a *direct* pecuniary

interest in the order from which he appeals.  *In re Peoples*, 764 F.3d at 820 ("The doctrine

limits standing to persons with a financial stake in the bankruptcy court's order,

meaning they were directly and adversely affected pecuniarily by the order." (citations

and quotations omitted)); *In re AFY*, 734 F.3d at 820-21 (indirect consequences from a

bankruptcy order are not enough to confer appellate standing); *LTV Steel Co.*, 560 F.3d

at 454 ("simply holding a claim of any type against the estate does not automatically

confer appellate standing"); *Travelers Ins. Co.*, 45 F.3d at 741 (no standing where

insurer's interest in the bankruptcy order was "remote and contingent").

Appellants' interest as potential creditors is remote from the substantive-consolidation order because that interest depends on the highly uncertain outcome of the avoidance actions.  If appellants prevail in those actions—and they express confidence that they will—then appellants will never file proofs of claim against a bankruptcy estate and their interest as creditors will never come into being, much less be affected by Judge Kishel's substantive-consolidation order.  Under these circumstances, any pecuniary harm to appellants as creditors is merely potential and cannot be characterized as a direct consequence of the substantive-consolidation order.

Indeed, because their status as creditors turns entirely on the outcome of the avoidance actions, appellants' "contingent claim" argument is really just another way of attempting to assert their interest as adversary defendants.  *Cf. LTV Steel Co.*, 560 F.3d at 455 (because the lawsuit against the appellant would be dismissed if he succeeded in reversing the bankruptcy court's order, his potential claim against the estate for litigation expenses was "nothing more than an indirect way of arguing that his status as a defendant in a lawsuit is sufficient to confer 'person aggrieved' standing").  This is especially true because the SPEs to which appellants loaned money do not appear to have any assets except for the avoidance actions.  Compared to their immediate interest as adversary defendants in avoiding liability to the estate, appellants' future interest in protecting their share of nonexistent assets is essentially theoretical.

Appellants cite cases in which courts have allowed creditors with contingent claims to participate in proceedings before the bankruptcy court. *See, e.g.*, *In re Dunes Hotel Assocs.*, No. 94-75715, 1997 WL 33344253, at *10-13 (Bankr. D.S.C. Sept. 26, 1997). As noted earlier, however, the standard for permitting a party to participate in proceedings before a bankruptcy court is broader and more lenient than the "person aggrieved" standard that governs standing to appeal orders of a bankruptcy court. *In re AFY*, 734 F.3d at 824. Thus, the fact that potential future creditors are sometimes permitted to participate in bankruptcy proceedings does not establish that they have standing to appeal the orders of the bankruptcy court.

If appellants are eventually found liable in the trustee's avoidance actions—and if appellants then file claims against the estate that are detrimentally affected by the substantive-consolidation order—then presumably appellants may invoke that harm as the basis for an appeal at that time.[10] For the present, however, appellants' harm is too

---

[10]At oral argument, the trustee predicted that appellants would not be able to attack the propriety of the substantive-consolidation order in the avoidance actions. It is worth noting, however, that courts have permitted adversary defendants to contest the *nunc pro tunc* feature of substantive-consolidation orders as part of adversary proceedings—an inquiry that (as such courts have noted) "closely parallel[s]" the substantive-consolidation analysis and that can be a dispositive issue in a preference action. *See In re Auto-Train Corp.*, 810 F.2d 270, 277 (D.C. Cir. 1987); *see also In re Mars Stores, Inc.*, 150 B.R. 869, 878-80 (Bankr. D. Mass. 1993) (in preference action, permitting the creditors' trustee to argue that the earlier substantive-consolidation order should have *nunc pro tunc* effect and leaving for trial the issue of the defendants' reliance on the corporate separateness of their debtor).

(continued...)

contingent and indirect to grant them status as "persons aggrieved." Appellants'

appeals are therefore dismissed.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein,

IT IS HEREBY ORDERED THAT:

1.      Appellees' motion to dismiss for lack of jurisdiction [ECF No. 52 in Case

No. 13-CV-3611] is GRANTED.

2.      These appeals [Case Nos. 13-CV-3611, 13-CV-3614, 13-CV-3616, and 13-

CV-3618] are DISMISSED WITHOUT PREJUDICE FOR LACK OF

JURISDICTION.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated:  April 23, 2015                          s/Patrick J. Schiltz
                                                Patrick J. Schiltz
                                                United States District Judge

---

[10](...continued)
True, in permitting the adversary defendant to contest the *nunc pro tunc* feature
of the substantive-consolidation order, *Auto-Train* mainly relied on the fact that the
adversary defendant had not received adequate notice of the consolidation hearing. *Id.*
at 278.  The court also noted, however, that the adversary defendant did not suffer any
harm until "the Trustee sued to recover the funds as preferential," *id.* at 278 n.11,
suggesting that the proper time for the defendant to litigate the issue was during the
adversary proceeding.